**M & W ELECTRIC MANUFACTURING COMPANY, Plaintiff,**

v.

**GATTO ELECTRIC SUPPLY COMPANY, Defendant,**

and

Atlas Industries Co., Intervenor.

No. 478 Misc.

United States District Court
M. D. Pennsylvania.

Dec. 1, 1965.

James A. Kelly, Kelly & Walker, Scranton, Pa., Jack H. Cohen, Cohen & Allison, East Palestine, Ohio, Paul T. O'Neil, Shanley & O'Neil, Washington, D. C., of counsel, for plaintiff.

Ellis Berger, Scranton, Pa., Caesar, Rivise, Bernstein & Cohen, Philadelphia, Pa., Hahn, Loeser, Freedheim, Dean & Wellman, Cleveland, Ohio, of counsel, for defendant and intervenor.

SHERIDAN, Chief Judge.

This is a motion by plaintiff, M & W Electric Manufacturing Company, for an order requiring Carl J. Sebo, manager of Atlas Industries Co., intervening defendant, to answer certain questions propounded upon oral examination.

The underlying action is for patent infringement and is pending in the United States District Court for the Northern District of Ohio, Eastern Division (Cleveland, Ohio). The defendant, Gatto Electric Supply Company, a dealer in a device manufactured by intervening defendant and called an "offset reducer" or "eccentric coupler," has its place of business in Cleveland, Ohio, within the jurisdiction and venue of that court. The intervening defendant has its place of business in Scranton, Pennsylvania, within the jurisdiction of this court and it is here that the deposition was taken on June 15, 1965. The motion is made pursuant to Rule 37 of the Federal Rules of Civil Procedure which permits a party to "apply to the court in the district where the deposition is taken for an order compelling an answer."

Defendant and intervening defendant have denied infringement and have pleaded the invalidity of plaintiff's patent as an affirmative defense. Plaintiff asserts that one of the issues to be decided by the trial court is whether material differences exist between the devices of plaintiff and the intervening defendant. Defendant answers that there is no such issue and that the real issue is whether intervening defendant's device comes within the scope of one or more claims of the plaintiff's patent. Plaintiff alleges that another issue is whether defendant's and intervening defendant's actions were deliberate and willful so as to justify an award of treble damages. The

charge of willful and deliberate infringement is based upon the allegation that intervenor pirated or copied plaintiff's device. It is to this issue that plaintiff contends its questions [1] to Mr. Sebo were directed.

Intervening defendant's principal objection is that plaintiff is attempting to have Mr. Sebo compare the devices of plaintiff and intervening defendant, and that this has been prohibited not only in many cited cases but also by the Ohio court in earlier proceedings in this action. Defendant points to interrogatories propounded by plaintiff in 1962 and 1963 and a motion for leave to file a request for admission, all of which sought directly or indirectly to have intervening defendant make such a comparison, and each time the court prohibited it. Defendant states that the effect of the questions, clothed in terms of "origin," merely seek to achieve comparisons. Plaintiff argues that the decisions of the Ohio court related to the issue of "material differences" in the infringement claim and not to willfulness.

The decisions, cited by defendant, prohibit comparisons because they seek to elicit legal conclusions and opinions in patent claims which are not subject to discovery. Trabon Eng'r. Corp. v. Eaton Mfg. Co., N.D. Ohio 1964, 37 F.R.D. 51; Hoak v. Empire Steel Corp., N.D. Ohio 1946, 5 F.R.D. 330; Lanova Corp. v. National Supply Co., W.D.Pa. 1939, 29 F.Supp. 119. In Meese v. Eaton Mfg. Co., N.D. Ohio 1964, 35 F.R.D. 162, 165–166, the interrogatories called for opinions on the patent, and whether a part of defendant's product infringed on plaintiff's product. The court said:

" * * * In the early days of the Federal Rules, interrogatories were restricted to facts, and no opinions

1. The questions were:
"1. * * * state specifically each and every feature of Plaintiff's Exhibit 2 which you embodied or incorporated into Plaintiff's Exhibit 1 at the time you designed the latter.

"2. At the time you designed Plaintiff's Exhibit 1 did you have knowledge of an offset reducer for a service mast installation having a lug positioned at approximately 90 degrees to the axis of symmetry?"

could be demanded. Hoak v. Empire Steel Corporation, 5 F.R.D. 330 (N.D. Ohio 1946). After some experience with this restriction, Courts have gradually discarded it. The better view permits interrogatories addressed to matters of opinion when an answer would serve a substantial purpose in expediting the lawsuit. * * * The interrogatories objected to each inquire whether a part of defendant's product infringes upon plaintiff's patented product; quite obviously this calls for an opinion involving a point of law. The prohibition against interrogatories requesting a legal opinion is rooted, though, in the fact that parties generally are unable to answer or express such an opinion. 'The assertion and discussion of legal theories, and the classification of facts in support thereof, should be by the lawyers.' United States v. Selby, [D.C.] 25 F.R.D. 12, 14. In patent cases, however, the Court can think of no one *more qualified* than the inventors to express opinion as to what constitutes theft of their inventiveness. Therefore, the interrogatories directed to the contentions of the plaintiffs may stand. * * * "

See also Luey v. Sterling Drug, Inc., W.D. Mich. 1965, 240 F.Supp. 632.

█ The answer to question No. 1 may result in Mr. Sebo giving an opinion on the legal conclusion of infringement. The question is not framed in the language of the patent, and Mr. Sebo is not being asked to compare the essentials of intervening defendant's device to the terms of plaintiff's patent, but there is no difference in effect, since plaintiff's device is described by a patent. Plaintiff, however, seeks information on copying only as it relates to damages. Mr. Sebo was the only one connected with the design of intervening defendant's device. Mr. Sebo also testified that he designed it from his mind with no sketches. He admitted that he had plaintiff's device before him when he designed intervening defendant's device, and that he incorporated certain features of plaintiff's device. Question No. 1 is relevant in discovery to the issue of copying and damages. Since the trial court intends to try this action in two parts—a trial on infringement and a separate trial on damages—there can be no prejudice even if the interrogatory is improper in the infringement claim. The interrogatory is valid because the answer could be a basis for a determination that Mr. Sebo willfully copied the patented features. Moreover, to answer would not be burdensome since the Ohio court described the device as small and of an uncomplicated nature.

█ In actions in which the trial on infringement and damages are separate, some courts will not permit discovery on damages until the fact of infringement has been established. This is a matter within the discretion of the court. 4 Moore, Federal Practice, para. 26.18 (2d ed.). To defer such discovery here could well work to the prejudice of the plaintiff, because if Mr. Sebo were unavailable for trial, plaintiff might have great difficulty establishing willful copying. Moreover, in those cases where discovery on damages has been deferred, the discovery usually involved inspection of voluminous business records which would impose a heavy burden on a defendant and could result in a disclosure of business affairs to a competitor before his liability was established. Ibid. The discovery here presents no such problems.

█ Question No. 2 is not even an attempt to have Mr. Sebo make comparisons. It does not seek to elicit whether the device of plaintiff or that of intervening defendant, or both devices, include "a lug positioned at approximately 90 degrees to the axis of symmetry." Rather it seeks to elicit what Mr. Sebo knew at the time he designed intervening

396

defendant's device. If plaintiff establishes that both devices include such a lug, the information may be relevant to damages. In any event, all of the matters discussed with respect to question No. 1 also would apply here.

Defendant argues that matters involving origin are irrelevant to a patent infringement suit, citing Kurtzon v. Sterling Indus., Inc., E.D. Pa. 1964, 227 F. Supp. 393. In that case, plaintiff asked defendant to produce drawings and data concerned with the development and manufacture of the alleged infringing article. Plaintiff did not make any effort to show the reason—the "good cause" —for the production of the data. The court viewed the request in relation to *infringement,* and indicated that it was not relevant unless defendant intended to rely on this data as prior art. There is no indication that plaintiff claimed treble damages due to willful copying.

 In 4 Moore, Federal Practice, para. 26.16[5] at page 1202 (2d ed.), it is stated:

" * * * Where the ground for refusal to answer is neither irrelevancy nor privilege, however, it seems that the court, whether the court in which the action is pending or an auxiliary court, should ordinarily compel the deponent to answer, * * * ."

This observation is in line with the spirit of the Federal Rules of Civil Procedure. Otherwise, instead of discovery aiding in the expeditious handling of an action, the lawsuit becomes a series of smaller separate actions which cause delay.

The other arguments advanced by intervening defendant have been considered and they are not persuasive. The questions should be answered. Meese v. Eaton Mfg. Co., supra; Luey v. Sterling Drug, Inc., supra.

 The parties have moved that their respective opponents be required to pay the expenses incurred in this proceeding, including reasonable attorneys'

fees. On the basis of the foregoing, however, it cannot be said that the acts of the parties were without substantial justification. Fed.R.Civ.Pr. 37(a). The motions are denied.